# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| WAREHOUSE HOME FURNISHINGS DISTRIBUTORS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PRIDEFAM BUSINESS VENTURES, LLC, and 2002 MARSHALL ENTERPRISES, LLC,<br><br>Defendants. | 2:25-CV-144 |

## ORDER

Before the Court is Plaintiff Warehouse Home Furnishings Distributors, Inc.'s motion to dismiss Defendants' amended counterclaims, dkt. no. 38. This motion is fully briefed, dkt. nos. 38, 40, 42, and the Court held oral argument on July 15, 2026, dkt. no. 45. For the reasons set forth below, Plaintiff's motion to dismiss is **GRANTED in part** and **DENIED in part.**

## BACKGROUND[1]

Plaintiff Warehouse Home Furnishings Distributors, Inc.

[1] For the purposes of Plaintiff's motion to dismiss, Defendants' factual allegations set forth in the amended answer and counterclaims will be taken as true. See United States v. SouthernCare, Inc., No. CV410-124, 2014 WL 4829279, at *1 n.2 (S.D. Ga. Sept. 29, 2014).

(hereinafter, "Farmers Home")[2] brings the instant lawsuit to challenge Defendants' alleged misuse of its registered trademarks and consumer confusion tied to that alleged misuse. Dkt. No. 1 ¶¶ 1-2. To explain, Farmers Home Furniture is a "nationally recognized" furniture retailer operating over 260 locations across the southeastern United States and over one hundred locations in Georgia alone. Id. ¶¶ 14-15. Utilizing this business model, the brand remains committed to offering furniture options tailored to each "local community's needs and design preferences" and claims to have earned the loyalty of many customers. Id. ¶ 16.

Farmers Home maintains a variety of registered trademarks associated with its retail furniture store services. Id. ¶ 18. The trademarks at issue in the present action (collectively, "Hometown Marks" or "the disputed marks") include three "Class 35" marks, the classification for marks pertaining to "retail furniture store services." Id. ¶¶ 18, 20-22. First, Farmers Home has allegedly used both its "YOUR HOMETOWN STORE®" (Registration Number 2343623) and "YOUR HOME TOWN STORE®" (Registration Number 2341415) marks in connection with its retail furniture store services since 1998. Id. ¶¶ 20-21. Further, Farmers Home alleges that it has used its "THE HOMETOWN STORE YOU CAN TRUST®" (Registration Number 2483309)

[2] Warehouse Home Furnishings Distributors does business as "Farmers Home Furniture" and refers to itself as such throughout its briefing. Dkt. Nos. 38, 42.

mark in the same retail furniture store service context since 2001. Id. ¶ 22; see also Dkt. No. 1-1 (registration information for Hometown Marks). Farmers Home contends that it has invested significant time, money, and resources into building widespread recognition of the Hometown Marks, while also making reasonable efforts to protect those marks from improper use. Dkt. No. 1 ¶¶ 24-25.

Despite those purported reasonable efforts, Farmers Home nonetheless contends that it suffered from infringing activities by Defendants involving these marks. See generally id. ¶¶ 26-48. To summarize this dispute, since as early as October 2024, Pridefam Business Ventures, LLC, and 2002 Marshall Enterprises, LLC (collectively, "Defendants"), have operated retail furniture stores called "Hometown Furniture" across the Southeastern United States, including stores in Valdosta, Douglas, Glennville, Quitman, and Baxley, Georgia. Id. ¶¶ 27-29. Defendants advertise their services via each store's website, highlighting the stores as "community-centered" and "locally focused." Id. ¶¶ 30-31.

Farmers Home takes issue with Defendants' use of the "Hometown Furniture" name for its stores, claiming that this is confusingly similar to Farmers Home's marks. Id. ¶ 32. Specifically, the primary issue cited by Farmers Home is that "Hometown Furniture" shares the same dominant term—"Hometown"—as its marks, and each ends with generic terms for the associated services ("Store" and

"Furniture"). Id. ¶ 33. For similar reasons, Farmers Home also challenges Defendants' use of the tagline "Furniture You Love, A Hometown You Trust" on their websites, arguing that this infringes on Farmers Home's rights in its "THE HOMETOWN STORE YOU CAN TRUST" mark. Id. ¶¶ 35-40. Farmers Home is especially concerned about potential confusion because of the similarity of services offered by its stores in comparison to Defendants' stores, as well as the close geographic proximity between various Farmers Home and Hometown Furniture stores, some of which are located on the same street. Id. ¶¶ 34, 42-43.

Stemming from this concern, Farmers Home initiated the present lawsuit on November 12, 2025, asserting claims against Defendants for trademark infringement under the Lanham Act (Count I); false designation of origin pursuant to 15 U.S.C. § 1125(a)(1)(A) (Count II); violation of the Georgia Deceptive Trade Practices Act (Count III); trademark fraud under Georgia law (Count IV); common law unfair competition (Count V); common law trademark infringement (Count VI); and attorneys' fees under O.C.G.A. § 13-6-11. See generally id.

In response, Defendants, acting separately, counterclaimed against Farmers Home, dkt. nos. 15, 16, and Farmers Home moved to dismiss each Defendant's counterclaim, dkt. nos. 25, 26. Before the Court ruled on the motions to dismiss, Defendants each filed an amended counterclaim, dkt. nos. 32, 33. Farmers Home now moves

to dismiss the amended counterclaims in a singular motion,[3] dkt. no. 38.

The hearing held on July 15, 2026 discussed three then-pending motions: Farmers Home's motion to dismiss Pridefam's original counterclaims, dkt. no. 25; Farmers Home's motion to dismiss 2002 Marshall's original counterclaims, dkt. no. 26; and Farmers Home's motion to dismiss each Defendant's amended counterclaim, dkt. no. 38. Dkt. No. 45. At the hearing, the Court orally denied as moot Plaintiff's first two motions to dismiss Defendants' counterclaims, as these sought dismissal of the original counterclaims which were no longer the operative pleadings in light of Defendants' amendments. Dkt. No. 46. As such, the only remaining motion to dismiss pending before the Court is Farmers Home's motion to dismiss the amended counterclaims, dkt. no. 38.

Defendants counterclaim seeks declaratory judgment and damages, arguing that the registrations for the three disputed Farmers Home marks should be cancelled pursuant to 15 U.S.C. § 1119 and 28 U.S.C. §§ 2201 *et seq.* (Count I). Dkt. No. 32 ¶¶ 15-20;

[3] As noted in Farmers Home's motion, Pridefam and 2002 Marshall each filed separate first amended answers and counterclaims on February 27, 2026. Dkt. Nos. 32, 33; Dkt. No. 38 at 1 n.1. Despite this, Farmers Home addresses both sets of counterclaims in a singular motion, noting that the counterclaims from the two Defendants are "substantively identical asserting the same counterclaims with the same allegations." Dkt. No. 38 at 1 n.1. Accordingly, this Order follows the same structure and will analyze both counterclaims simultaneously.

Dkt. No. 33 ¶¶ 15-20. Defendants also counterclaim for abuse of process (Count II); unfair competition under 15 U.S.C. § 1125(a) and Georgia common law (Count III); and tortious interference (Count IV). Dkt. Nos. 32, 33.

**LEGAL STANDARD**

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Allstate Fire & Cas. Ins. Co. v. Mankin, No. CV 223—096, 2024 WL 3165306, at *4 (S.D. Ga. June 25, 2024) (citing Great Am. Assurance Co. v. Sanchuk, LLC, No. 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). Under Federal Rule of Civil Procedure 8, a plaintiff or counterclaimant's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

To determine whether this requirement is satisfied, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). Legal conclusions, on the other hand, are not entitled to the same presumption of truth; the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Instead, a complaint must "contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

At the motion to dismiss stage, the key inquiry is whether the complaint or counterclaim contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[4] Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Mankin, 2024 WL 3165306, at *4. This means that the claimant must plead sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Importantly, this does not impose a probability requirement on claimants, but a complaint does need to give rise to "'more than a sheer possibility' that the plaintiff's

[4] At the hearing on the instant motion, counsel for the non-movant alleged that this is a "notice pleading" jurisdiction. That is, however, not the applicable standard when a motion to dismiss is filed in federal court. While it is true that "Georgia is a notice pleading jurisdiction," Atlanta Women's Specialists, LLC v. Trabue, 850 S.E.2d 748, 752 (Ga. 2020), *federal* procedural law governs in federal court, ML Healthcare Servs., LLC v. Publix Super Mkts., Inc., 881 F.3d 1293, 1301 (11th Cir. 2018). As such, the applicable pleading standard is not the notice pleading standard utilized in Georgia's state court system, but rather Twombly and Iqbal's plausibility standard which applies Federal Rule of Civil Procedure 8.

allegations are true." Gissendaner v. Comm'r, 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

In the motion to dismiss before the Court, Farmers Home argues that Defendants' claim for cancellation of Farmers Home's marks (Count I) should be dismissed "because Defendants' claims of 'genericness' are deficient and Defendants' claim of descriptiveness is not a valid basis for cancellation of an incontestable trademark." Dkt. No. 38 at 2. Further, Farmers Home contends that Defendants cannot state viable claims for abuse of process (Count II), unfair competition (Count III), or tortious interference (Count IV) because, according to Farmers Home, those claims rely upon "vague assertions" and "conclusory" allegations. See generally id.

### I. Count I: Cancellation of Farmers Home's Marks

Count I of the amended counterclaim seeks cancellation of the purportedly "generic" Farmers Home marks at the core of this action, dkt. nos. 32, 33, and Farmers Home contends that this count should be dismissed because Defendants rely on "conclusory" allegations, dkt. no. 38 at 5–7. Farmers Home also seeks dismissal of Count I by arguing that, should the disputed marks be deemed descriptive, that is not a valid basis for trademark cancellation because the marks have achieved "incontestable" status under 15 U.S.C. § 1065. Id. at 7–8. In response, Defendants do not dispute

that the Hometown marks are "incontestable." Dkt. No. 40 at 3–7. Instead, Defendants contend that their allegations of "genericness" provide a valid legal basis to challenge even an incontestable mark, further contending that the genericness-centered allegations in the amended counterclaim satisfy federal pleading requirements. Id.

Turning first to the idea of statutorily defined "incontestability," a mark earns such status "if it has been registered for five years with the Patent & Trademark Office, and its holder has filed an affidavit as required by 15 U.S.C. § 1065(3)." Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc., 91 F. Supp. 3d 1265, 1275 (S.D. Fla. 2015) (citing 15 U.S.C. § 1065(3)), aff'd sub nom. Fla. Int'l Univ. Bd. of Tr. v. Fla. Nat'l Univ., Inc., 830 F.3d 1242 (11th Cir. 2016). In Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., the Supreme Court analyzed the impact of incontestability status, holding that an "incontestable" mark may not be challenged on the grounds that it is merely descriptive and without secondary meaning. 469 U.S. 189, 196 (1985); see also Fla. Int'l, 91 F. Supp. 3d at 1275 (same).

In its analysis, the Supreme Court drew a clear distinction between challenges to a mark alleged to be "generic" and challenges to a mark alleged to be "merely descriptive." Park 'N Fly, 469 U.S. at 196. On one hand, "[m]arks that constitute a common descriptive name are referred to as generic," and "[a] generic

term is one that refers to the genus of which the particular product is a species." Id. at 194 (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)). A "merely descriptive mark," on the other hand, simply "describes the qualities or characteristics of a good or service." Id. Crucial to the instant analysis, if the holder of a registered, incontestable mark brings an action to enjoin infringement upon that mark, the alleged infringing party may not raise descriptiveness as a defense. Id. at 205. But incontestability status does not foreclose cancellation based on genericness, as "[g]eneric terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." Id. at 194. Accordingly, to the extent Count I states that the disputed marks are "generic, or at a minimum descriptive" and "have not acquired secondary meaning beyond a narrow scope," genericness could form a legal basis for the cancellation claim, but descriptiveness and lack of secondary meaning cannot. Dkt. No. 32 ¶ 16.

After accounting for this distinction, the inquiry then becomes whether genericness is plausibly alleged in Count I of the amended counterclaim. The primary authority cited by the parties on this point is Dave & Buster's I, L.P. v. Arcade Time USA LLC, a 2025 case in the Southern District of Florida. See Order Granting Mot. to Dismiss Def.'s Am. Countercl. at 2–5, Dave & Buster's I, L.P. v. Arcade Time USA LLC, No. 0:25-cv-60494 (S.D. Fla. Oct. 16,

2025), Dkt. No. 39.[5] In Dave & Buster's, the defendant filed an amended counterclaim seeking cancellation of the plaintiff's "Eat Drink Play" mark as generic pursuant to 15 U.S.C. §§ 1064 and 1119. Id. at 1–3. In the motion to dismiss that followed, the movant contended that the cancellation claim should fail because it did not plausibly allege genericness of the mark. Id. at 3. In its analysis, the court accounted for three relevant allegations: (1) an allegation that there was third-party use of the phrase "EAT DRINK PLAY" in the restaurant industry to demonstrate that customers were accustomed to hearing that phrase; (2) links to various websites containing or mentioning the phrase; and (3) an allegation that the phrase named the exact nature of Dave & Buster's services, without more. Id.

The court concluded that an allegation of third-party use, without factual support, is conclusory, further reasoning that the links to various websites in the counterclaim did little to provide factual support because only two of the functioning linked websites used the phrase "Eat Drink Play" in the restaurant context. Id. at 4. In turn, the court dismissed defendant's amended counterclaim. Id. at 5.

[5] To the extent the Court refers to Dave & Buster's I, L.P., it cites directly to the docket in that case as identified by the parties.

The present case is distinct from Dave & Buster's because the amended counterclaim contains more factual support for the contention that the disputed marks are generic. Dkt. Nos. 32, 33. In this context, "[a] word may be generic of some things and not of others: 'ivory' is generic of elephant tusks but arbitrary as applied to soap." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980). This is why the failure to identify third-party usage of the phrase "Eat Drink Play" *in the restaurant context* was fatal to the cancellation claim in Dave & Buster's. But, here, Defendants identify ten registered marks using the word "hometown" in the furniture business and provide thirteen hyperlinks which use the word "hometown" directly in website URLs linking similar furniture-related services. Dkt. No. 32 ¶ 10; Dkt. No. 33 ¶ 10. Genericness is a category of distinctiveness,[6] and the Eleventh Circuit has explicitly stated that "[t]o determine whether a term is descriptive, third-party usage by competitors is probative." Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1523 (11th Cir. 1991).

[6] "Distinctiveness" is a function of what the Eleventh Circuit refers to as a mark's "strength." Engineered Tax Servs., Inc. v. Scarpello Consult., Inc., 958 F.3d 1323, 1327 (11th Cir. 2020). "To be valid, a trademark must be 'distinctive'—that is, it must 'serve the purpose of identifying the *source* of . . . goods or services,' not just the goods and services themselves." Id. (quoting Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1357 (11th Cir. 2007)).

This is, however, not the end of the inquiry. As noted by the parties at oral argument, the Supreme Court's decision in Booking.com lends further guidance as to the genericness analysis. U.S. Pat. & Trademark Off. v. Booking.com B.V., 591 U.S. 549, 556 (2020). There, the Court held that, "for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation." Id.

A review of Booking.com's lengthy procedural history reveals that the question of whether "Booking.com" was generic for federal trademark registration purposes was originally analyzed by the district court at the motion for summary judgment stage, a district court judgment which was then appealed to the Fourth Circuit and, later, to the Supreme Court. See, e.g., Booking.com B.V. v. Matal, 278 F. Supp. 3d 891, 895 (E.D. Va. 2017), amended, No. 116CV425LMBIDD, 2017 WL 4853755 (Oct. 26, 2017), aff'd sub nom. Booking.com B.V. v. U.S. Pat. & Trademark Off., 915 F.3d 171 (4th Cir. 2019), as amended (Feb. 27, 2019), aff'd, 591 U.S. 549 (2020), cert. granted, judgment vacated, 591 U.S. 1024 (2020), aff'd sub nom. Booking.com B.V. v. U.S. Pat. & Trademark Off., 915 F.3d 171 (4th Cir. 2019), as amended (Feb. 27, 2019), aff'd, 591 U.S. 549 (2020), cert. granted, judgment vacated, 591 U.S. 1024 (2020). District courts analyzing the impact of third-party usage on the genericness inquiry at the motion to dismiss stage in the wake of Booking.com have still found instructive caselaw where a claimant

survived a motion to dismiss their cancellation claim by identifying third-party usage of part (but not all) of a disputed mark. See, e.g., Wild Tomato Pizza, LLC v. Wild Man, Inc., No. 25-CV-527, 2025 WL 3496573, at *4 (E.D. Wis. Dec. 5, 2025) (holding, after Booking.com, that cancellation counterclaim was due to be dismissed because claimant set forth only conclusory allegation of genericism without identifying "any specific examples of similar marks" (citing Garcia v. Glob. Dev. Strategies Inc., 44 F. Supp. 3d 666 (W.D. Tex. 2014) (denying motion to dismiss counterclaim to cancel "Affordable Overhead Door Company" mark where claimant pointed to third-party federal registrations containing the word "affordable"))).

Thus, because Count I need only be *plausible* at this early stage, the factual support for genericness incorporated into the cancellation claim is enough to survive dismissal. Iqbal, 556 U.S. at 678; see also Garcia, 44 F. Supp. 3d at 673 (recognizing "stringent burden" on defendants to ultimately succeed on cancellation claim but concluding that allegations were sufficient to survive a motion to dismiss (citing Iqbal, 556 U.S. at 678; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1079 (5th Cir. 1997); Ft. James Corp. v. Kimberly-Clark Tissue Co., No. 98 C 7834, 1999 WL 966144, at *4 (N.D. Ill. Oct. 8, 1999))). To the extent evidence gathered during discovery may undermine the contention that the marks are generic, that is better suited for

adjudication at a later stage in the litigation process. See Investacorp, 931 F.2d at 1525 (analyzing distinctiveness of mark on appeal of district court's grant of summary judgment).

Finally, Defendants allege that, in a letter dated June 3, 2025, Farmers Home effectively conceded genericness by stating that "[t]he use of 'HOMETOWN' in connection with retail furniture store services implies a locally-owned or community-focused furniture store." Dkt. No. 32 ¶ 18; Dkt. No. 33 ¶ 18. But the fact that Farmers Home sent a letter, which Defendants do not describe in great detail, utilizing this phrase does not give much support to the conclusion that Farmers Home concedes genericness; rather, even taking this factual allegation as true, the statement from the letter is a vague description of the marks by Farmers Home, not a wholesale concession of the distinctiveness of those marks. Dkt. No. 32 ¶ 18; Dkt. No. 33 ¶ 18; Iqbal, 556 U.S. at 678. That being so, while Defendants include sufficient factual support for Count I, this support is not based on the June 3, 2025 letter. Accordingly, the Court **DENIES** Farmers Home's motion to dismiss as to Count I.

## II. Count II: Abuse of Process

To state a claim for malicious abuse of process under Georgia law, "there must be an ulterior motive on the part of the plaintiff to employ the process for a purpose for which it was not designed, [c]oupled with an improper act in the use of such process [a]fter

it has issued which amounts to its perversion to some unlawful purpose." Cooper v. Pub. Fin. Corp., 246 S.E.2d 684, 688 (Ga. Ct. App. 1978) (citing Landers v. Ga. Pub. Serv. Comm'n, 125 S.E.2d 495 (Ga. 1962); W. Ga. Pulpwood & Timber Co. v. Stephens, 198 S.E.2d 420 (Ga. Ct. App. 1973)).[7] The critical element of such a claim is that the action lies for "improper use of process after it has been issued, not for maliciously causing it to issue." Ellis v. Millen Hotel Co., 14 S.E.2d 565, 567 (Ga. 1941). While Georgia courts have indicated that malicious *use* of process cannot be the basis of a counterclaim, a claim for malicious abuse of process is not *per se* excluded and may be asserted by counterclaim. Lane Co. v. Taylor, 330 S.E.2d 112, 119 (Ga. Ct. App. 1985) (citing Canal Ins. Co. v. Cambron, 242 S.E.2d 32 (Ga. 1978); Medoc Corp. v. Keel, 263 S.E.2d 543 (1979)).

Expanding upon what it means to improperly use process after it has been issued, "[t]he test is whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." Whitehead v. S. Disc. Co., 135 S.E.2d 496, 498 (Ga. Ct. App. 1964). "Regular and legitimate use of process" will not

[7] The legal basis for Count II is not entirely clear. In the motion to dismiss, Farmers Home provides three potential legal bases for this count and analyzes each. Dkt. No. 38 at 8-12. Defendants clarified at the motion hearing that Count II is based *solely* on Georgia common law, and the Court will treat it as such for the purposes of this Order.

qualify as malicious use of process, even if carried out "with a bad intention." Id. (citing Davison-Paxon Co. v. Walker, 163 S.E. 212, 214 (Ga. 1932)).

Regarding Count II of the amended counterclaim in this action, Farmers Home argues that dismissal is proper because Defendants purportedly rely upon conclusory allegations, the logic of Count II is countered by Plaintiff's motion to stay discovery, and the claims are allegedly undermined by Defendants' own admissions and disclosures. Dkt. No. 42 at 7-10; Dkt. No. 38 at 8-12. In making its arguments for dismissal of Count II, Farmers Home relies in part on the Georgia Court of Appeals' analysis in Medoc, 263 S.E.2d 543, contending that its choice to file the present lawsuit, without more, cannot form a viable basis for an abuse of process counterclaim. Dkt. No. 38 at 10-11. In response, Defendants state that Farmers Home's reading of Medoc should not control, as their abuse of process claim does not rest solely on Farmers Home's initiation of the present suit. Dkt. No. 40 at 7-8.

Medoc was an action initiated by a customer at a corporation's disco who filed suit against the corporation for false imprisonment and malicious prosecution. 263 S.E.2d at 544. The corporation answered the suit and counterclaimed against the plaintiff, alleging that plaintiff filed the civil action "for the purpose of harassing Defendant, of causing Defendant to needlessly have to incur substantial expenses to defend itself, and is causing

Defendant extreme expense and annoyance." Id. There, the Georgia Court of Appeals explained that "[m]alicious abuse of civil process . . . lies when the plaintiff in a civil proceeding wilfully misapplies process of the court in order to obtain an objective such process was not intended by law to achieve." Id. at 545. The critical element in an abuse of process action is "improper use of process after it has been issued, not for maliciously causing it to issue." Id. at 545-46. The only allegations in the Medoc corporation's counterclaim were that plaintiff "wrongfully" brought suit and "continued" to pursue that action, neither of which were "improper act[s]" sufficient to sustain an abuse of process claim, warranting dismissal. Id. at 545.

In the present matter, however, the amended counterclaim's substantive allegations render Medoc distinct. To explain, Defendants contend that Farmers Home used the initiation of its lawsuit to influence marketplace perceptions of Defendants' business after the lawsuit was initiated, stating that "[f]ollowing the initiation of this action, [Plaintiff] invoked the pendency of this lawsuit and the counterfeiting allegations as a basis to influence third parties' perceptions of [Defendants'] business, separate and apart from any request for relief from this Court," thus "leveraging the existence of this action as a coercive instrument to chill [Defendants'] commercial activity and impair its ability to operate in the ordinary course of business." Dkt.

No. 32 ¶¶ 24-25; Dkt. No. 33 ¶¶ 24-25. At bottom, this provides more support than the allegations challenging the Medoc plaintiff's choice to bring and continue suit which were insufficient in that case. 263 S.E.2d at 544; Dkt. No. 32 ¶¶ 24-25; Dkt. No. 33 ¶¶ 24-25.

In light of these allegations, Defendants are not alleging the filing of the lawsuit itself was the tort; they instead allege that after the suit was filed, the lawsuit was used improperly to impact third-party perceptions of Defendants in the market in which both Farmers Home and Defendants operated, evidencing an ulterior motive. Dkt. No. 32 ¶¶ 24-25; Dkt. No. 33 ¶¶ 24-25. The amended counterclaim also identifies an action in furtherance of that alleged ulterior motive: though identified in Count IV rather than Count II itself, Defendants claim that Farmers Home communicated with third parties "having existing or prospective business relationships with [Defendants]," "asserted or implied" that Defendants' business operations were "unlawful, infringing, or counterfeit," and "call[ed] into question [Defendants'] legitimacy as a retail furniture operator." Dkt. No. 32 ¶¶ 43-44; Dkt. No. 33 ¶¶ 43-44; see also Su v. CSX Transp., Inc., No. 3:22-CV-849-MMH-JBT, 2023 WL 6940242, at *5 (M.D. Fla. Oct. 11, 2023) (citing Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

plausible.”)), report and recommendation adopted, 2024 WL 1298825 (Mar. 27, 2024).

According to Defendants, Farmers Home’s communications with third parties referencing the counterfeiting allegations amounted to an effort to unfairly influence third parties’ perceptions of Defendants’ business, chill Defendants’ commercial activity, and undermine Defendants’ ability to operate in the ordinary course of business within the furniture retailers’ overlapping markets. Dkt. No. 32 ¶¶ 24–27; Dkt. No. 33 ¶¶ 24–27. In sum, because the amended counterclaim contains allegations supporting the contentions that (1) Farmers Home filed a lawsuit for the purpose of utilizing that suit to wrongly interfere with Defendants’ commercial reputation and continued operations, evidencing an ulterior motive, and (2) Farmers Home actually committed an act in furtherance of this ulterior motive by communicating with individuals in the market about Defendants’ alleged “unlawful” or “infringing” business dealings to undermine Defendants’ business reputation, the Court holds that Defendants have plausibly alleged both an ulterior motive behind the lawsuit (to unfairly influence the market’s perception of Defendants and cause reputational harm to a direct competitor in the same industry and geographic market) and an action in furtherance of that improper purpose (contacting individuals in that market and using the pendency of this lawsuit to undermine the legitimacy of Defendants’ business). Dkt. No. 32

¶¶ 24-25; Dkt. No. 33 ¶¶ 24-25; see also Cooper, 246 S.E.2d at 688; Torok v. Yost, 335 S.E.2d 419, 421 (Ga. App. 1985) (holding that the trial court's dismissal of abuse-of-process claim was premature because claimant alleged that defendants filed counterclaim to wrongly coerce plaintiff to dismiss their lawsuit), aff'd, 344 S.E.2d 414 (Ga. 1986).

Further, this conclusion is bolstered by Defendants' characterization of the intent behind Farmers Home's motion to stay in this case. To explain, Defendants' aver that these competitive and economic pressures continue to harm their business functioning as long as the lawsuit remains pending and that Farmers Home can use the stigma associated with the infringement suit to put pressure on the consumer market.[8] Dkt. No. 32 ¶ 28; Dkt. No. 33 ¶ 28. The Court recognizes that "this Court and other courts within the Eleventh Circuit routinely find good cause to stay the discovery period where there is a pending motion to dismiss." Harrell v. Bacon Cnty., Ga., No. 5:24-CV-74, 2025 WL 639343, at *1 (S.D. Ga. Feb. 27, 2025) (citations omitted). But, while the Court recognizes that filing a motion to stay, standing alone, surely does not constitute abuse of the litigation process, Farmers Home's filing of that motion does nonetheless fall in line with the narrative alleged by Defendants: that Farmers Home initiated the

[8] The allegation that a motion to stay discovery was filed by Farmers Home is supported by the record, dkt. no. 27.

instant lawsuit against them in an effort to inflict reputational damage on Defendants in the market, that Farmers Home highlighted the pendency of the lawsuit in communications with third-party market actors to inflict this reputational damage, and that Farmers Home sought to delay the lawsuit to allow it to continue to inflict this reputational harm. Dkt. No. 32 ¶¶ 13, 24-28, 43-44; Dkt. No. 33 ¶¶ 13, 24-28, 43-44.

In sum, the Court holds that it is premature to dismiss Count II because Defendants' allegations make it plausible that Farmers Home initiated the instant lawsuit and took subsequent steps after filing suit to "compel [Defendants]" to "do some collateral thing which [Defendants] could not legally be compelled to do"—that is, to compel Defendants to "chill" their business operations in the very market it shares with Farmers Home, triggered by Farmers Home's alleged use of this lawsuit to undermine Defendants' reputation—the Court **DENIES** Farmers Home's motion to dismiss as to Count II. See Whitehead, 135 S.E.2d at 498.

**III. Count III: Unfair Competition**

In Count III, Defendants counterclaim for unfair competition pursuant to 15 U.S.C. § 1125(a)—a portion of the federal Lanham Act—as well as Georgia common law. Dkt. No. 32 ¶¶ 30-39; Dkt. No. 33 ¶¶ 32-39. Turning first to the federal basis, a claimant

pursuing a false advertising claim[9] under Section 43(a)(1)(B)[10] of the Lanham Act must establish that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). Before reaching these elements, "a court must be mindful that the Lanham Act prohibits only those false or misleading statements that occur in the context of 'commercial advertising or promotion.'" See Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F. Supp. 2d 1270, 1278-79 (S.D. Fla. 2008) (quoting Optimum Techs., Inc. v. Home Depot USA, Inc., No. 04-3260, 2005 WL 3307508, at *4-5 (N.D. Ga. Dec. 2, 2005)). The parties' primary dispute surrounds whether Defendants

[9] Count III is titled "Unfair Competition Under 15 U.S.C. § 1125(a) and Georgia Common Law." Dkt. No. 32 ¶ 30; Dkt. No. 33 ¶ 30. The broader cause of action for "unfair competition" provided by Section 43(a) of the Lanham Act encapsulates both "trademark protections" and the Lanham Act's "prohibition on false advertising." Duty Free Am., Inc. v. Estee Lauder Co., Inc., 797 F.3d 1248, 1276 (11th Cir. 2015). Thus, while the parties in their briefing rely upon caselaw analyzing federal "false advertising" claims rather than claims operating under the "unfair competition" title given to Count III, it is proper for the parties to do so. Id.; Dkt. No. 32 ¶¶ 30-39; Dkt. No. 33 ¶¶ 30-39; see generally Dkt. Nos. 38, 40, 42.

[10] Section 43 of the Lanham Act is codified at 15 U.S.C. § 1125.

plausibly alleged Farmers Home engaged in "commercial advertising or promotion" to form the basis of a Section 43(a) false advertising claim. Dkt. Nos. 38 at 13–16; Dkt. No. 40 at 10-11; Dkt. No. 42 at 11-12. The Court holds that Defendants have not done so.

In their briefing and at the motion hearing, the parties dispute the persuasive effect of two key cases: Futuristic Fences, 558 F. Supp. 2d at 1278–79, and ThermoLife International, LLC v. Hi-Tech Pharmaceuticals, Inc., No. 1:15-CV-00892-ELR, 2019 WL 12291350, at *8 (N.D. Ga. Nov. 1, 2019), report and recommendation adopted, 2019 WL 12291385 (Nov. 25, 2019). Dkt. No. 38 at 13–16. Futuristic Fences analyzed, at the motion for summary judgment stage, whether four cease-and-desist letters to prospective customers of a competitor could constitute "commercial speech" to give rise to a false advertising claim under the Lanham Act. 558 F. Supp. 2d at 1278–79. Explaining that the Eleventh Circuit has yet to articulate a test to determine whether misrepresentations are "commercial advertising or promotion" within the meaning of the Lanham Act, the district court applied the test utilized by the majority of circuits. Id. at 1279. Under this test, which Futuristic Fences refers to as the "Gordon & Breach" test, statements qualifying as "advertising or promotion" are defined as:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classical advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

Id. The court ultimately concluded that the cease-and-desist letters did not meet the definition of "commercial advertising or promotion" under this test because the purpose of the letters was to "inform the recipients of allegations of infringement," not to convince the recipients to buy the sender's products instead of the allegedly infringing products. Id. at 1281.

Relying in large part on Futuristic Fences, the Northern District of Georgia in ThermoLife determined that the demand letters at issue in that action did not qualify as commercial advertising or promotion, either. 2019 WL 12291350, at *8. This time at the motion to dismiss stage, the claimant alleged that counsel for ThermoLife sent a copy of a demand letter to customers to alert them that continued selling of the allegedly infringing product placed them in jeopardy of legal action. Id. at 6–8. Acknowledging that allegations of disparaging statements made against competitors in an effort to gain market share could, under certain circumstances, satisfy the Lanham Act's commercial speech requirements at the pleading stage, the court held that the

allegations regarding the demand letter fell short because the claimant did not present any nonconclusory allegations that the purpose of the demand letter was an attempt to gain market share rather than an attempt to alert customers of alleged infringement. Id.

Here, Count III similarly falls short. Defendants contend that Farmers Home has made "false, misleading, and overstated representations to the public, including asserting that [Defendants'] use constitutes 'counterfeiting,' misrepresenting the strength, scope, and exclusivity of its marks, and claiming rights it does not possess over descriptive and/or generic terminology." Dkt. No. 32 ¶ 32; Dkt. No. 33 ¶ 32. Defendants further contend that this has or is likely to cause consumer confusion and "was intended to prevent [Defendants] from fairly competing in the retail furniture market by attempting to improperly expand trademark rights." Dkt. No. 32 ¶ 32; Dkt. No. 33 ¶ 32. To the extent this amended counterclaim references the intent behind these statements, it does so in conclusory fashion, an allegation which is not entitled to an assumption of truth at this time. Id.; Iqbal, 556 U.S. at 678-79.[11]

---

[11] The Court notes that the allegations surrounding Farmers Home's communications with third parties factored into a plausible claim in Count II, analyzed supra, yet those same allegations are insufficient with respect to Count III's federal basis. This is because of the different nature of an abuse-of-process claim under Georgia law (Count II) and a false advertising claim under the

Beyond this legal conclusion, the only detail in the amended counterclaim regarding these "misrepresentations" is that Farmers Home allegedly "made or caused to be made statements to third parties, including customers, vendors, landlords, and other market participants, asserting or implying that [Defendants'] business constituted infringement or 'counterfeiting.'" Dkt. No. 32 ¶¶ 33–34; Dkt. No. 33 ¶¶ 33–34. This does not provide enough detail to allow the Court to conclude that commercial speech is plausibly alleged because, even at the motion to dismiss stage, facts such as who made a particular statement, to whom the statement was made, what was said, why it was said, and the manner and breadth of dissemination, all hold weight in the "commercial advertising or

Lanham Act (Count III). See Lane Co., 330 S.E.2d at 119; Hickson Corp., 357 F.3d at 1260. At the core of Count II is whether Defendants plausibly alleged an act (communicating with third parties about the counterfeiting allegations) in furtherance of its ulterior motive (to use the lawsuit as a vehicle to cause reputational damage and compel Defendants to reduce its business operations in Farmers Home's market), and the allegations in the amended counterclaim made it plausible that such an act occurred. Dkt. No. 32 ¶¶ 24–25; Dkt. No. 33 ¶¶ 24–25. At the core of Count III, though, is not simply whether Farmers Home undertook some "act" to undermine Defendants' business dealings, but rather whether communications themselves qualify as commercial advertising or promotion, whether the *content* of the communications was false or misleading, and whether the *content* of the communications deceived or had the capacity to deceive customers. Hickson Corp., 357 F.3d at 1260. With the limited information provided about the contents of and circumstances surrounding the third-party communications, Count III falls short of the applicable pleading requirements to the extent it is a Lanham Act claim, even if Defendants have plausibly alleged Count II.

promotion" inquiry—yet, even where amended counterclaim touches on those facts, here, it does so in terms too vague and general to allow the Court to conduct a meaningful analysis. ThermoLife, 2019 WL 12291350, at *6-8; see also SouthState Bank, N.A. v. Qoins Techs., Inc., 720 F. Supp. 3d 1324, 1340 (N.D. Ga. 2024).

For example, Defendants have not clarified whether Farmers Home made the disputed comments directly or through another party, what was said beyond general allegations of infringement or "counterfeiting," the form of such statements, or the recipient of the communications (beyond the open-ended list of third parties in the counterclaim).[12] Dkt. No. 32 ¶¶ 33-34; Dkt. No. 33 ¶¶ 33-34. Likewise, there is limited clarity as to *how* the statements were disseminated or how broadly, both of which weigh on whether a district court can draw the reasonable inference that the intent was to influence customers. See SouthState Bank, 720 F. Supp. 3d at 1340 (at the motion to dismiss stage, accounting for allegations that party made representations via its website because statements are more likely to constitute commercial advertising when alleged to be "public-facing and widely accessible" (citing Concordia Pharms. Inc., S.A.R.L. v. Winder Lab'ys, LLC, No. 2:16-CV-00004-

[12] Through listing what is unclear from the amended counterclaim, the Court does not seek to imply that every one of these facts is required for a false advertising claim to surpass a motion to dismiss. This Order's holding on that issue, instead, is that where *none* of these things are sufficiently plead, dismissal is proper.

RWS, 2021 WL 3573118, at *15 (N.D. Ga. Feb. 17, 2021))). Without sufficient facts to allow the Court to draw a conclusion about whether commercial intent has been plausibly alleged, Count III falls short of the requirements to state a false advertising claim under the federal Lanham Act.

In their response, Defendants contend that any potential pleading gap could be cured with discovery, blaming the motion to stay as the reason for their lack of specificity. Dkt. No. 40 at 9–10, 14–15. This, however, does not revive Defendants' otherwise-deficient pleading. At this procedural threshold, it is the counterclaimant's job to plausibly allege an actionable claim, not to set forth vague allegations to escape dismissal and engage in a broad "fishing expedition" during discovery in an attempt to uncover some previously unknown statement to support its claim. See Jet Blast, Inc. v. Blue Lake Serv., LLC, 348 F.R.D. 706, 712 (N.D. Fla. 2025) ("[D]iscovery cannot be used as a fishing expedition[.]"). Other district courts in this circuit have rejected similar claims at the motion to dismiss stage, mirroring this same logic. ThermoLife, 2019 WL 12291350, at *8.

Finally, to the extent Count III is based on Georgia common law, the outcome does not change. Farmers Home contends that a Lanham Act unfair competition claim and a similar claim under Georgia common law rise and fall together, dkt. no. 38 at 17–18, whereas Defendants contend that this is not the case, dkt. no. 40

at 11-12. Case law from other courts within this circuit supports the proposition that a "Lanham Act unfair competition determination also resolves Plaintiff's claims for common law unfair competition and Georgia unfair competition, O.C.G.A. § 23-2-55." Home-Grown Indus. of Ga., Inc. v. Mellow Mushroom of Tom's River, LLC, No. 1:22-CV-04919-SCJ, 2024 WL 6901296, at *6 (N.D. Ga. May 17, 2024) (citing Tarsus Connect, LLC v. Cvent, Inc., 452 F. Supp. 3d 1334, 1362-63 (N.D. Ga. 2020) ("Georgia common law unfair competition and Georgia unfair competition are dependent on the success of its claims under the Lanham Act, as each claim requires the same analysis." (alterations adopted)); ITT Corp. v. Xylem Grp., LLC, 963 F. Supp. 2d 1309, 1326 (N.D. Ga. 2013) ("Georgia unfair-competition claims under O.C.G.A. § 23-2-55 involve the same dispositive questions as trademark-infringement claims under the Lanham Act.")). As such, the Court holds that it is proper to **DISMISS** Count III of the counterclaim.

## IV. Count IV: Tortious Interference

Finally, Farmers Home seeks dismissal of Count IV, arguing that a good-faith trademark enforcement action cannot support a tortious interference action, and that Defendants' allegations are conclusory and fail to identify specific business relationships. Dkt. No. 38 at 17-20; Dkt. No. 42 at 13-17. This argument, again, rests in large part on Defendants' lack of detail about the statements allegedly made by Farmers Home to third parties or the

circumstances under which those statements were allegedly made. Dkt. No. 38 at 17–20. Defendants do not dispute that good-faith litigation, standing alone, cannot support their claims; they instead contend that the present suit is not "good-faith" litigation. Dkt. No. 40 at 12–15. Defendants also claim that they are not required to plead with particularity the statements which form the basis of their claim, especially when this information is "in the hands" of Farmers Home. Id.

Without reaching the dispute over whether Defendants plausibly allege the underlying action is "bad faith" litigation, the Court holds that Defendants fail to plausibly allege Count IV of their amended counterclaim. To state a counterclaim for tortious interference with business relations, the counterclaim-plaintiff must plausibly allege that the counterclaim-defendant "(1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury." Renden, Inc. v. Liberty Real Est. Ltd. Partn. III, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994) (emphasis in original) (citations omitted). "An essential element of a tortious interference with business relations claim 'is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the plaintiff.'" Farr v. Daling, 684 F. Supp. 3d

1322, 1340 (N.D. Ga. 2023) (quoting Sweet City Landfill, LLC v. Lyon, 835 S.E.2d 764, 774 (Ga. Ct. App. 2019)).

Defendants' failure to specifically name the parties who could be or actually were steered away from their businesses based on the alleged tortious interference is not fatal to a tortious interference claim. See id. ("Plaintiffs were not required to specifically name their third-party or potential renters to sufficiently allege a tortious interference claim." (citing Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co., 917 F.3d 1249, 1275–76 (11th Cir. 2019) (finding that failing to name the customers does not constitute a failure to identify specific third parties))). But, at the same time, courts in this circuit have rejected tortious interference claims at the motion to dismiss stage for failure to identify even a single client actually lost due to the alleged interference. See USI Ins. Servs. LLC v. S.E. Series of Lockton Co., LLC, No. 1:20-CV-02490-SCJ, 2021 WL 912258, at *6 (N.D. Ga. Mar. 10, 2021).

Here, like in Count III, Defendants state that Farmers Home engaged in conduct to undermine Defendants' ongoing relationships with an open-ended list of potential parties: "customers, vendors, landlords, lenders, employees, and/or prospective business partners." Dkt. No. 32 ¶ 41; Dkt. No. 33 ¶ 41. This, again, hinges on alleged "false or misleading accusations, threats of legal action, and misuse of asserted trademark rights," but Defendants

provide very little information about these allegedly tortious communications beyond a general pronouncement about the subject matter. Dkt. No. 32 ¶¶ 45–46; Dkt. No. 33 ¶¶ 45–46. And despite providing a list of potential business relationships which could have, in theory, been harmed by these statements, Defendants do not identify a relationship which was actually impacted. See Dkt. No. 32 ¶¶ 40–49; Dkt. No. 33 ¶¶ 40–49; see also USI Ins., 2021 WL 912258, at *6. Instead, Defendants rely on the conclusory and speculative assertion that the purported "tortious interference is ongoing and continues to harm" Defendants' "existing and prospective economic relationships." Dkt. No. 32 ¶ 48; Dkt. No. 33 ¶ 48. Without more, Count IV falls short. USI Ins., 2021 WL 912258, at *6 (same).

Finally, Defendants again blame the discovery stay for their failure to plausibly allege Count IV, but this argument remains unavailing. Dkt. No. 40 at 16–17. As was the case with Count III, explained supra, the purpose of discovery is to gather evidence to support a plausibly alleged claim, not to launch a fishing expedition to discover whether a claim exists in the first place. See Jet Blast, 348 F.R.D. at 712.

In sum, at this time the Court holds that it is proper to dismiss Counts III and IV but not Counts I and II of the counterclaim.

**V. Leave to Amend**

In their response brief, Defendants argue that, if the Court finds their counterclaims to be lacking, granting leave to amend is the more proper course of action rather than dismissal. Dkt. No. 40 at 15. Under Eleventh Circuit jurisprudence, a district court may properly deny leave to amend when such amendment would be futile. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Id. (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999)).

Here, Defendants have already exercised one opportunity to amend their pleadings, as they amended their counterclaim once as a matter of right. Dkt. Nos. 32, 33. Defendants now effectively concede that they cannot add more information regarding the statements underlying Counts III and IV without proceeding to discovery to gain information currently in the hands of Farmers Home, meaning Defendants cannot plead additional facts to add to their deficient counts to allow them to survive dismissal. Dkt. No. 40 at 16–17.

In their response brief, Defendants contend that "[d]ismissal with prejudice before [] discovery occurs would be an abuse of discretion." Dkt. No. 40 at 10 (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005)). Not so. As noted by Farmers

Home at the motion hearing, the Eleventh Circuit in Corsello affirmed the district court's dismissal of the complaint, concluding that the district court *did not abuse its discretion* when it denied the claimant's request to file a third amended complaint. Id. The Eleventh Circuit has also explicitly stated that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins. Neither the parties nor the court have any need for, or right to, discovery before the court rules on such a motion." Steward v. Int'l Longshoreman's Ass'n, Loc. No. 1408, 829 F. App'x 913, 917 (11th Cir. 2020) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997)). As such, the Court declines to give Defendants a third bite at the apple with respect to the two deficient claims in the amended counterclaim.

## CONCLUSION

Farmers Home's motion to dismiss Defendants' amended counterclaim, dkt. no. 38, is **GRANTED in part** and **DENIED in part.** Specifically, the motion is **GRANTED** as to Counts III and IV of Defendants' amended counterclaim and **DENIED** as to Counts I and II. Accordingly, Counts III and IV of each Defendant's amended counterclaim, dkt. nos. 32, 33, are **DISMISSED with prejudice.**

**SO ORDERED** this 6th day of October, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA